UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HANOVER INSURANCE GROUP, INC., f/k/a ALLMERICA FINANCIAL CORPORATION, <br><br> Plaintiff, <br><br> v. <br><br> CHARTIS SPECIALTY INSURANCE COMPANY f/k/a AMERICAN INTERNATIONAL SPECIALTY LINES INSURANCE COMPANY, <br><br> Defendant. | CIVIL ACTION <br> NO. 12-40156-TSH |

**ORDER GRANTING PLAINTIFF'S MOTION TO REMAND**
August 19, 2013

HILLMAN, District Judge.

**Introduction**

This is a contract dispute arising from a professional services liability policy. On August 20, 2012, Plaintiff Hanover Insurance Group, Inc. f/k/a Allmerica Financial Corporation ("Hanover") sued its insurer, Defendant Chartis Specialty Insurance Company f/k/a/ American International Specialty Lines Insurance Company ("Chartis"), alleging that Chartis failed to compensate Hanover for certain claims covered under its policy (Docket No. 9). Specifically, Hanover alleges after it erroneously paid out nearly $13 million on over 3,000 of its annuity policies, a self-inflicted error, that Chartis only remitted $3.1 million towards that loss. On November 16, 2012, Chartis timely removed the matter to this Court (Docket No. 1). On December 13, 2012, Hanover filed its motion to remand to state court (Docket No. 12). I took the

present matter under advisement after a motion hearing held on May 2, 2013 (Docket No. 21). Accordingly, for the following reasons, Hanover's Motion to Remand is GRANTED.

## Factual Background

### A. The Parties

Hanover is an insurance provider duly incorporated in Delaware and maintains a principal place of business at 440 Lincoln Street in Worcester, Massachusetts. Compl. ¶ 1. Chartis is an insurance provider duly incorporated in Illinois and maintains a principal place of business at 175 Water Street in New York, New York. *Id.* ¶ 2; Answer ¶ 2.

### B. The Policy

On July 1, 2005, Hanover and Chartis executed an insurance policy wherein Chartis agreed to indemnify Hanover against losses it may incur on its own policies. Attached as Exhibit 1 to Hanover's Motion to Remand (hereinafter "the Policy") (Docket No. 12-1). The underlying circumstances related to the breach of contract action are irrelevant to the disposition of the present matter. Rather, this Court is charged with deciding a jurisdictional dispute based on the language contained in Paragraph 12 of the Policy's "General Conditions" ("Paragraph 12"). *Id.* ¶ 12. Specifically, the relevant language of Paragraph 12 states that:

> It is agreed that in the event of failure of the Company to pay any amount claimed to be due hereunder, the Company, at the request of the Insured, will submit to the jurisdiction of a court of competent jurisdiction within the United States. Nothing in this condition constitutes or should be understood to constitute a waiver of the Company's rights to commence an action to a United States District Court or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States. It is further agreed . . . that in any suit instituted against the Company upon this contract, the Company will abide by the final decision of such court or of any appellate court in the event of any appeal.

*Id.*

## Standards of Review

### A. Jurisdiction, Removal and Remand

Plaintiffs, as "master[s] to decide what law [they] will rely upon," may, as a matter of strategy, remedy their claims in state court. *The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25, 33 S. Ct. 410 (1913). "[P]rovided that the defendant can show some basis for federal jurisdiction," *Danca v. Private Health Care Sys., Inc.*, 185 F.3d 1, 4 (1st Cir. 1999), they may remove a civil action if the "district courts of the United States have *original jurisdiction*." 28 U.S.C. § 1441(a) (emphasis added). Removal jurisdiction under Section 1441 is strictly construed and "[i]f at any time before final judgment, it appears that the district court lacks jurisdiction, the case [must] be remanded." 28 U.S.C. § 1447(c); *Danca*, 185 F.3d at 4; *Frankston v. Denniston*, 376 F. Supp. 2d 35, 41 (D. Mass. 2005); *Sansone v. Morton Mach. Works, Inc.* 188 F. Supp. 2d 182, 186 (D.R.I. 2002) ("[B]ecause removal statutes are an infringement on the power of the states, they must be strictly construed in favor of state court jurisdiction."). This is especially true in the context of motions to remand based upon a "service of suit" clause where "the defendant bears the burden of demonstrating the propriety of removal." *Dinallo v. Dunav Ins. Co.*, 672 F. Supp. 2d 368, 369 (S.D.N.Y. 2009) (quoting *Cal. Pub. Emps.' Ret. Sys. v. Worldcom, Inc.*, 368 F.3d 86, 100 (2d Cir. 2004)).

### B. Contract Interpretation

It is well-settled within the First Circuit that "determining the real and common intent of the contracting parties is the fundamental criteria for contract interpretation." *P.R. Tel. Co. v. SprintCom, Inc.*, 662 F.3d 74, 91 (1st Cir. 2011); *see also Newmont Mines Ltd. v. Hanover Ins. Co.*, 784 F.2d 127, 135 (2d Cir. 1986) ("The cardinal principle for the construction and interpretation of insurance contracts—as with all contracts—is that the intentions of the parties

should control."). Thus, the threshold question courts ask is whether ambiguity exists in the contract language set forth by the parties. *Farmers Ins. Exch. v. RNK, Inc.*, 632 F.3d 777, 783 (1st Cir. 2011).

Determining whether a contract provision is ambiguous is a matter of law left for the court to decide. *Vicor Corp. v. Vigilant Ins. Co.*, Nos. 09-1470, 09-1494, 09-1589, 2012 WL 883198, at *11 (1st Cir. Mar. 16, 2012). If the court finds the contract language "ambiguous, uncertain, or equivocal in meaning, [however,] the intent of the parties is a question of fact to be determined at trial." *Young v. Wells Fargo Bank, N.A.*, 717 F.3d 224, 231-32 (1st Cir. 2013). Intent is determined by "what an *objectively reasonable insured*, reading the relevant policy language, would expect to be covered." *Brazas Sporting Arms, Inc. v. Am. Empire Surplus Ins. Co.*, 220 F.3d 1, 4 (1st Cir. 2000) (emphasis added); *see also Commercial Union Ins. Co. v. Walbrook Ins. Co.*, 7 F.3d 1047, 1050 (1st Cir. 1993); *Champion Int'l Corp. v. Cont'l Cas. Co.*, 546 F.2d 502, 505 (2d Cir. 1976) ("We . . . prefer to examine [insurance] policies in light of the business purposes sought to be achieved by the parties and the plain meaning of the words chosen by them to effect those purposes."). Furthermore, "courts may determine the meaning of ambiguous terms based on the law in force at the time the agreements are made, as the law in force . . . becomes . . . part of the agreement . . . and the contract will be construed in the light of such law." *In re Bank of New Eng. Corp.*, 646 F.3d 90, 95 (1st Cir. 2011) (internal citations omitted).

Insurance policy provisions, like the one at issue here, are ambiguous if they are reasonably susceptible to more than one meaning. *Certain Interested Underwriters at Lloyd's, London v. Stolberg*, 680 F.3d 61, 66 (1st Cir. 2012); *Bank v. IBM*, 145 F.3d 420, 424 (1st Cir. 1998) ("[A] contract is only ambiguous where an agreement's terms are inconsistent on their face

or where the phraseology can support reasonable differences of opinion as to the meaning of the words employed and obligations undertaken.") (internal quotations and citations omitted). "[A]mbiguity—unlike beauty—does not lie wholly in the eye of the beholder. An ambiguity must be real. A policy provision will not be deemed ambiguous simply because the parties quibble over its meaning." *Stolberg*, 680 F.3d at 66. A contact should not be interpreted in such a way as to create an "absurd or nonsensical result." *State Police Ass'n of Mass. v. C.I.R.*, 125 F.3d 1, 4 (1st Cir. 1997). "This is especially true when interpreting contracts drafted by sophisticated and experienced entities, for such are not likely to inadvertently write meaningless, contradictory or vestigial language into a contract." *Allendale Mut. Ins. Co. v. Excess Ins. Co.*, 970 F. Supp. 265, 269 (S.D.N.Y. 1997) (citing Restatement (Second) of Contracts § 203(a)) (1981)).

While a contract is interpreted "according to its plain terms," *Farmers*, 632 F.3d at 784, every word or phrase remains important and "are to be read as elements in a practical working document and not as a crossword puzzle." *Fleet Nat'l Bank v. H&D Entm't, Inc.*, 96 F.3d 532, 538 (1st Cir. 1996). Where ambiguities in an insurance contract exist, they are "strictly construed against the insurer." *Rosciti v. Ins. Co. of Pa.*, 659 F.3d 92, 96 (1st Cir. 2011); *Penn-America Ins. Co. v. Lavigne*, 617 F.3d 82, 85 (1st Cir. 2010) (noting that ambiguous insurance contracts are "construed liberally in favor of the insured").

## Analysis

During the motion hearing, I commended both parties for presenting clear and concise arguments in support of their respective positions. While that sentiment still holds true today, the review of the contested language in this matter demands a more expansive explanation. This dispute is one of semantics. Here, the issue is whether the language contained in Paragraph 12

effectively waives Chartis' right to remove the action to federal court. In order to properly analyze the parties' arguments, the Court separates this discussion in the following manner:

### A. "Service of Suit" Clauses

Although not explicitly labeled as such within the Policy, Paragraph 12 is unquestionably a "service of suit" clause. These types of clauses were developed and implemented in insurance and reinsurance policies by Lloyd's of London and have been a frequent source of litigation for many years.[1] *See Fleming Bldg. Co. v. Columbia Cas. Co.*, 751 F. Supp. 2d 1218, 1219 (N.D. Okla. 2010); *Allendale*, 970 F. Supp. at 273; *Gen. Phx. Corp. v. Malyon*, 88 F. Supp. 502, 503 (S.D.N.Y. 1949). Some courts have considered these clauses akin to forum selection clauses. *See Foster v. Chesapeake Ins. Co.*, 933 F.3d 1207, 1209 n.1 (3d Cir. 1991). With few exceptions,[2] none of which are at issue in this case, where an insurer has removed a state court action brought by its insured and a valid service of suit clause exists, the insurer's right to removal has been waived and remand is appropriate. *See, e.g.*, *Russell Corp. v. Am. Home Assurance Co.*, 264 F.3d 1040, 1047 (11th Cir. 2001); *City of Rose v. Nutmeg Ins. Co.,* 931 F.2d 13, 16 (5th Cir. 1991); *Foster*, 933 F.3d at 1219; *Travelers Ins. Co. v. Keeling*, No. 91-cv-7753-JFK, 1993 WL 18909

---

[1] Specifically, the *Allendale* court noted that:
> For almost as long, state and federal courts throughout the nation have struggled to give meaning to this clause, sometimes reaching different conclusions on basic issues such as (1) whether the clause is a type of "forum selection clause"; (2) whether the clause precludes the insurer from making a successful motion for *forum non conveniens* if the insured files an action in a United States court; (3) whether the clause bars the insurer from removing an insured's state court action to federal court; and (4) whether the clause precludes an insurer from bringing an action in a United States forum before the insured files its own action.

*Allendale*, 970 F. Supp. at 273-74.

[2] The two exceptions where courts have found that a defendant's right to remove has not been waived involve contracts that include separately enforceable arbitration provisions, *see, e.g.*, *McDermott Int'l v. Lloyd's Underwriters of London* 944 F.2d 1199, 1205 (5th Cir. 1991) (finding that an insurance policy's inclusion of both an arbitration clause and a service of suit clause created an ambiguity that ultimately led to the determination that the defendant's right to removal had not been waived); *Massey Energy Co. v. Am. Int'l Spec. Lines Ins. Co.*, No. 09-cv-00029, 2009 WL 1034243 (S.D. W. Va. Apr. 6, 2009); *Credit Gen. Ins. Co. v. John Hancock Mut. Life Ins. Co.*, No. 99-cv-02690, 2000 U.S. Dist. LEXIS 9009, at *14 (N.D. Ohio May 30, 2000) (listing cases), and actions involving insurance companies subject to the Foreign Sovereign Immunity Act under 28 U.S.C. §§ 1330, 1332, 1391(f), 1441(d), 1602-11, *Delta Am. Re Ins. Co. v. Nat'l Distillers & Chemical Corp.*, 900 F.2d 890, 893 (6th Cir. 1990).

(S.D.N.Y. Jan. 19, 1991); *Cessna Aircraft Co. v. Fidelity & Cas. Co. of N.Y.*, 616 F. Supp. 671, 675 (D.N.J. 1985); *but see Int'l Ins. Co. v. McDermott, Inc.*, 956 F.2d 93, 96 (5th Cir. 1992) (holding that while the insurer's right to remove is waived if the insured files suit first, nothing in the service of suit provision permits the insured to block the insurer from filing their own claim).

 B. <u>Paragraph 12</u>

  Like the concentric rings of a target, each word, clause and sentence of a contract holds a discrete value and meaning. With that in mind, each of the three sentences at issue in Paragraph 12 is unambiguous and after reading them in light of one another, I find that Chartis has effectively waived its right to remove.

  The first sentence contains *venue-limiting* language: if Chartis breaches the Policy by failing to pay an amount claimed by Hanover, it agrees to "submit to the jurisdiction of a court of competent jurisdiction within the United States." *See Weitz Co. v. Lloyd's of London*, No. 04-cv-90353, 2004 WL 3158070, at *7 (S.D. Iowa Dec. 6, 2004) (finding that this phrase, when used in service of suit clauses, "if it is to have any meaning, *acts as a waiver of venue objections*.") (emphasis added). Put simply, when a suit involves both parties, irrespective of which party commenced it, Chartis has agreed not to dispute venue in any state within the United States. This is not to say, however, that Chartis simply assents to personal jurisdiction "in America;" implicit within this clause is that the suit must take place in a single venue and, in turn, must also take place in a specific forum, under either federal or state jurisdiction. This is further supported by the fact that "venue" is "the territory, such as a country or other political subdivision, over which a trial court has jurisdiction." BLACK'S LAW DICTIONARY 1695 (9th ed. 2009).

  The second sentence contains Chartis' *non-waiver* language and forms the crux of the present dispute. Here, Chartis agreed to two conditions. First, Chartis retained the option of

initiating a suit against Hanover in any district court within the United States. Second, if Hanover sued Chartis, then nothing prevented Chartis from seeking "a transfer" of that action to another court under either federal or state laws.

Chartis contends that the plain meaning of this second condition reserves its right to remove to district court because the definition of the word "transfer" includes the right "to remove."[3] Chartis relies on a recent decision from the Eleventh Circuit, *Ocwen Orlando Holdings Corp. v. Harvard Prop. Trust, LLC*, which held that in the context of a forum selection clause "[t]o 'transfer' means to 'convey or *remove* from one place or one person to another.'" 526 F.3d 1379, 1381 (11th Cir. 2008) (citing BLACK'S LAW DICTIONARY 1536 (8th ed. 2004)) (emphasis added). Hanover, however, asserts that "transfer" in the present matter must be read in conjunction with venue-limiting language from the preceding sentence, i.e., once Hanover determines the specific venue where the case will take place after initiating suit, Chartis had the option to transfer the case to a more appropriate venue within the *same jurisdiction* under either federal or state law. Hanover argues that if this Court were to adopt Chartis' definition of "transfer," to include the right to remove from state to federal jurisdiction, then such a finding would render the condition "as permitted by the laws . . . of any state in the United States" superfluous because removal under 28 U.S.C § 1441(a) is a federal concept whereas transfer has

---

[3] Chartis also argues that even the Supreme Court has referred to the concepts of "transfer" and "remove" interchangeably. While an intriguing argument, these cases provide little value to the present matter. *See Breuer v. Jim's Concrete of Brevard, Inc.*, 538 U.S. 691, 692 (2003) ("[R]emoval just transfers it from one forum to another."); *Great Northern Ry. Co. v. Alexander*, 246 U.S. 276, 280 (1918) ("It is, of course, familiar law that the right of removal being statutory, a suit commenced in a state court must remain there until cause is shown for its transfer under some act of Congress."); *Little York Gold-Washing & Water Co. v. Keyes*, 96 U.S. 199, 202 (1877) ("For the purposes of the transfer of a cause, the petition for removal, which the statute requires, performs the office of pleading."). First, with respect to when the Court handed down these rulings, only the *Breuer* case actually contemplated 28 U.S.C. § 1441, the removal statute that underscores this case and which Congress enacted in 1948. Furthermore, each of these cases is factually and legally unrelated to the "service of suit" provision in this particular context and the fundamental principles of contract interpretation.

distinct legal connotations in *both* federal and state jurisdictions. In this context, I find Hanover's argument persuasive.[4]

While instructive, the *Ocwen* decision is inapposite to the present matter. What Chartis attempts to argue is a grammatical "bait-and-switch" by glossing over the context in which the word "transfer" was employed in that case. The contract at issue in *Ocwen* used the transitive verb "to transfer." *Id.* at 1381. In this service of suit clause, however, transfer is preceded by the article "a," meaning that the Policy refers to "transfer" as a noun. To follow Chartis' logic of exchanging the definition of a noun for a verb would inevitably produce an absurd and ungrammatical result as nothing in the noun form of "transfer" relates to the verb form "to remove."[5] Thus, when read in light of the preceding sentence, "transfer" in Paragraph 12 refers to a "transfer of venue." *See* Black's Law Dictionary 264 (9th ed. 2009) (defining "transfer of venue" as "the transfer of a case from one locale to another court in the *same judicial system . . .*

---

[4] Chartis alternatively argues that any waiver of the right to remove must be "clear and unequivocal." To support this contention, Chartis relies on several recent cases from this district. *See Elizabeth B. v. Sutton Sch. Dist.*, No. 10-10897-FDS, 2011 WL 475064 (D. Mass. Feb. 3, 2011); *Springfield v. Comcast Cable Commc'ns, Inc.*, 670 F. Supp. 2d 100 (D. Mass. 2009). This argument is unpersuasive because Chartis has conflated litigation-based waiver, at issue in those cases, with contract-based waiver, at issue here. While some courts have found that the standard of review in litigation-based waiver actions must be "clear and unequivocal," *see Foster*, 933 F.2d at 1217 n.15 (listing cases), other courts dispute whether such a standard applies to cases involving contract-based waiver. *See, e.g.*, *Global Satellite Commc'n Co. v. Starmill U.K. Ltd.*, 378 F.3d 1269, 1272 (11th Cir. 2004) ("This circuit has held that the determination of whether such a clause constitutes a waiver, . . . , is to be determined according to ordinary contract principles, and need not meet the higher threshold of a "clear and unequivocal" waiver that has otherwise applied to litigation-based waivers."); *Snapper, Inc. v. Redan*, 171 F.3d 1249, 1261 (11th Cir. 1999) ("[I]n the context of removal based solely on diversity jurisdiction, ordinary contract principles govern a contractual waiver."). Because the First Circuit remains equally undecided, *see, e.g.*, *Autoridad de Energia Electric de P.R. v. Ericsson Inc.*, 201 F.3d 15, 19 (1st Cir. 2000), this Court refrains from resolving that issue here. *But see Oscomp Sys., Inc. v. Bakken Express, LLC*, No. 12-11010-JGD, 2013 WL 1001960, at *5 (D. Mass. Mar. 12, 2013) ("[T]he question of waiver appears to depend more on the particular language used in the forum selection clause than on the standard applied by the court.").

[5]    1. Any mode of disposing of or parting with an asset or an interest in an asset, including a gift, the payment of money, release, lease, or creation of a lien or other encumbrance. The term embraces every method – direct or indirect, absolute or conditional, voluntary or involuntary – of disposing of or parting with property or with an interest in property, including retention of title as a security interest and foreclosure of the debtor's equity of redemption.
    2. Negotiation of an instrument according to the forms of law. The four methods of transfer are by indorsement, by delivery, by assignment, and by operation of law.
    3. A conveyance of property or title from one person to another.
BLACK'S LAW DICTIONARY 1636 (9th ed. 2009).

.") (emphasis added). Moreover, even assuming, arguendo, that Chartis did argue for the application of the noun form of "remove," the outcome would be the same. The noun form of "remove" is "removal" which in this context means "the transfer of an action from state to federal court." BLACK'S LAW DICTIONARY 1409 (9th ed. 2009). Thus, this definition would result in surplusage because the condition "as permitted by the laws . . . of any state in the United States" would be ineffectual since there is not a corresponding state law concept of removal as there is under federal law. *See* 28 U.S.C. §§ 1441(a) (removal), 1404(a) ("[A] district court may *transfer* any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.") (emphasis added).

The final sentence contains *forum-limiting* language: if sued by Hanover, Chartis agreed to "abide by the final decision of such court or of any appellate court in the event of any appeal." Like the first sentence, where Chartis agreed not to challenge the geographic venue where an action takes place, here Chartis agreed not to challenge the ultimate forum[6] in that venue once Hanover initiated suit. *See Nutmeg*, 931 F.2d at 15 ("[W]hile the provision does not specifically mention the right of a defendant to remove an action from state to federal court, the language of the [service of suit] clause makes clear that the policyholder shall enjoy the right to choose the forum in which any dispute will be heard."); *see also Archdiocese of Milwaukee v. Underwriters at Lloyd's of London*, 955 F. Supp. 1066, 1072-73 (E.D. Wis. 1997).

Removal would be antithetical to the plain language of this sentence. If, as Chartis contends, the word "transfer" in the second sentence includes the right to remove, then the third sentence would be made entirely superfluous. Chartis would be unable to "abide by" the ultimate decision of the court of Hanover's choosing, in either the federal or state judicial system, if it

---

[6] "Forum" is defined as: "a court or other judicial body; a place of jurisdiction." Black's Law Dictionary 725 (9th ed. 2009).

10

could simply remove the action to federal court. *See Foster*, 933 F.2d at 1217 ("[Defendant's] removal was particularly violative of these portions of the clause, for removal prevents *such court* from rendering a final decision.") (emphasis added).

After considering the arguments before me in conjunction with the express and unambiguous language set forth in Paragraph 12 of the Policy, I am convinced that Chartis has waived its right to remove to federal court. Therefore, remand is warranted.

## Conclusion

Accordingly, for the above stated reasons, Hanover's Motion to Remand (Docket No. 12) is hereby GRANTED.

It is so ORDERED.

                                                                       */s/ Timothy S. Hillman*
                                                                       TIMOTHY S. HILLMAN
                                                                       UNITED STATES DISTRICT JUDGE